IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AMY W.,                                          )
                                                 )
                Plaintiff,                       )
                                                 )
        v.                                       )        1:20cv392 (LMB/TCB)
                                                 )
ANDREW M. SAUL, Commissioner of the              )
        Social Security Administration,          )
                                                 )
                Defendant.                        )

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment [Dkt. Nos. 25 and

27]. Plaintiff Amy W.[1] ("plaintiff") filed this civil action to appeal the December 26, 2019 final

decision of the Commissioner of the Social Security Administration ("defendant" or "SSA")

denying her application for disability insurance benefits (DIB) under Title II of the Social

Security Act ("Act"). As explained below, the plaintiff's motion will be granted, the

defendant's motion will be denied, defendant's denial of plaintiff's application for DIB will be

vacated, and this matter will be remanded to the SSA for further consideration of the evidence.

---

[1] On May 1, 2018, the Committee on Court Administration and Case Management of the
Judicial Conference encouraged district courts to adopt the practice of using only the first name
and last initial of any non-governmental party in opinions in social security cases. The Local
Rules Committee of the United States District Court for the Eastern District of Virginia has
recommended adoption of this practice. Accordingly, this opinion refers to the plaintiff by her
first name and last initial.

# I. PROCEDURAL HISTORY

Plaintiff is a 52-year-old retired Air Force Lieutenant Colonel who holds a master's degree in industrial engineering. Plaintiff worked as a hospital administrator until the time of her medical retirement from the Air Force on June 23, 2018. Administrative Record ("AR") 48-51.

On January 3, 2019, plaintiff protectively filed an application for DIB, claiming that she became disabled on June 23, 2018. In support of her application, plaintiff alleged that she suffers from a variety of physical and mental impairments, including PTSD, depression, head trauma, migraines, cervical spine arthritis, a lumbar spine condition, and muscle spasms. AR 72. Plaintiff's application was denied at the initial determination level on April 18, 2019 (AR 88) and on the reconsideration level on July 9, 2019. AR 108. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on December 3, 2019. Plaintiff was represented by counsel during the hearing at which plaintiff and a vocational expert each testified. The ALJ issued his written decision on December 26, 2019.

In his decision, the ALJ conducted the required five step sequential analysis, finding at step one that the plaintiff had not engaged in substantial gainful activity since the date that her alleged disability began. At step two, the ALJ concluded that the plaintiff had the following severe impairments: "spinal disorders, major joint dysfunction, depressive disorder, anxiety disorder, posttraumatic stress disorder, and neurodevelopmental disorders." AR 21. Although the ALJ recognized that plaintiff suffered from migraines, he concluded that they were not a severe medically determinable impairment.

At step three, the ALJ determined that none of plaintiff's impairments, individually or in combination, met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. The ALJ then determined plaintiff's Residual Functional Capacity

("RFC"), finding that she was able to "perform light work as defined in 20 C.F.R. §404.1567(b)

except: occasionally operate foot controls with her left foot; frequently operate hand controls

bilaterally; frequently handle and finger bilaterally; frequently climb stairs and ladders;

occasionally stoop, crouch, and crawl; is able to perform simple, routine and repetitive tasks; is

able to interact with supervisors on a frequent basis; and, is able to interact with the public on an

occasional basis." AR 25.

After determining plaintiff's RFC, the ALJ concluded at step four that plaintiff would

not be able to return to her past work based on the testimony of the vocational expert. At the

final step, the ALJ found that plaintiff was not disabled because, according to the testimony of

the vocational expert, she would be able to perform other jobs that exist in significant numbers

in the national economy, such as office helper, clerical checker, and photocopy machine editor.

AR 35. Plaintiff requested review by the agency appeals council, but the appeals council denied

her request. AR 1. Accordingly, the decision of the ALJ is the final decision of the

Commissioner of Social Security regarding plaintiff's claim for DIB. Plaintiff timely filed this

civil action.

## II. DISCUSSION

### A. **Standard of Review**

Under the Act, a district court will affirm the Commissioner's final decision

"when an ALJ has applied correct legal standards and the ALJ's factual findings are

supported by substantial evidence." Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)

(quoting Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal quotations and citations omitted). In determining whether a decision is supported by substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ. . . . Rather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, [courts] defer to the ALJ's decision." Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020) (internal quotations omitted) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). "[W]hen assessing whether substantial evidence supports the ALJ's decision, the Court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and his or her rationale in crediting evidence." Saunders v. Saul, 2020 WL 94863, at *11 (E.D. Va. 2020) (citing Brown v. Comm'r of Soc. Sec., 969 F. Supp. 2d 433, 437 (W.D. Va. 2013)). If "the Court cannot determine whether the ALJ analyzed all of the evidence relevant to [the plaintiff's] disability claim . . . the Court cannot find that substantial evidence supports the Commissioner's decision to deny benefits." Id.

**B. Analysis**

Plaintiff challenges the ALJ's decision on four grounds. First, plaintiff argues that the ALJ erred at step two when he concluded that her migraines were not a severe impairment. Second, she challenges the ALJ's RFC determination, arguing that the ALJ did not adequately account for her moderate limitations in concentration, persistence and pace when he determined that she had the RFC to perform "simple, routine and repetitive tasks." Third, plaintiff argues

4

that the ALJ erred when evaluating the opinion of her treating psychologist, Kara O'Leary,

Ph.D. Finally, plaintiff maintains that the ALJ failed to include a limitation regarding

punctuality and attendance in the RFC determination.

### 1. Step Two: Consideration of Plaintiff's Migraines

Plaintiff asserts that the ALJ erred in his reading of the medical evidence concerning her

migraines and, as a result, his conclusion that plaintiff's migraines were not a severe impairment

is not supported by substantial evidence. To be considered "severe," an impairment must

"significantly limit [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R.

§404.1522(a). "[A]n impairment can be considered as 'not severe' only if it is a slight

abnormality which has such a minimal effect on the individual that it would not be expected to

interfere with the individual's ability to do work. . . ." Evans v. Heckler, 734 F.2d 1012, 1014

(4th Cir. 1984).

To explain his conclusion that plaintiff's migraines "do not qualify as a severe medically

determinable impairment," the ALJ wrote that:

> Treatment notes from July 2019 indicate that the [plaintiff's] migraines were
> considered a past medical problem, which suggests that [plaintiff's] migraines
> resolved in less than 12 months since the alleged onset date (Exhibit 17F/2, 6).
> Treatment notes also indicate the [plaintiff's] migraines were without aura, were
> not intractable, and did not have status migrainosus (Exhibit 19F/5, 8). Therefore,
> the [plaintiff's] migraines could not reasonably be expected to have more than a
> minimal effect on her ability to perform basic work activities.

AR 22. The exhibits cited by the ALJ do not, in fact, support his finding. Exhibit 17F/2 is a

page from the record of a September 30, 2019 visit to Malgorzata Gradzka, MD, a

rheumatologist. The purpose of plaintiff's visit to Dr. Gradzka was to seek care for arthalgia

(painful swollen joints) and "CTD (positive ANA, positive antiphospholipid antibody)," which

are ailments relevant to Dr. Gradzka's specialty, and not to seek treatment for plaintiff's

migraines. AR 2262 (exhibit 17F/2). What the ALJ relied upon from Dr. Gradzka's records was the inclusion of migraines in a list under the heading "Past Medical History," id.; however, several pages later in the record of the same September 30, 2019 visit, Dr. Gradzka wrote that plaintiff's "[m]igraine headaches are not controlled with medications." AR 2265 (Exhibit 17F/5) (emphasis added). The same information appears in the records of plaintiff's July 1, 2019 visit to Dr. Gradzka, which the ALJ cited at Exhibit 17F/6: migraines are included in a list of past medical history (AR 2266), but the records also reflect that "[m]igraine headaches are not controlled with medications." AR 2269 (emphasis added). By describing plaintiff's migraines in the present tense and stating that they were not controlled by medications, the records cited by the ALJ in fact indicate that plaintiff's migraines were an ongoing—not a past—problem during the period for which she applied for DIB.

Similarly, the ALJ erred by relying on pages 5 and 8 of Exhibit 19F, which he cited for the description of plaintiff's migraines as "without aura, not intractable, without status migrainosus." The ALJ failed to recognize that this description appears in the summaries of two visits that were follow up appointments after plaintiff sought emergency care for her migraines; the entries identify the "Reason for Visit" as "f/u after emg" and "f/u ER migraine headache," (meaning "follow up after emergency room visit for migraine headache") respectively. The entry on Exhibit 19F/5 is dated January 22, 2018—just six months before the alleged onset of plaintiff's disability. AR 2276. Exhibit 19F/8 is dated May 2, 2017, and although this date is more than 12 months earlier than the onset of plaintiff's disability, the ALJ relied on this same note to conclude that plaintiff's migraines were not severe—which undercuts any argument that the note is temporally too remote to be relevant to plaintiff's claim. AR 2279.

The ALJ totally missed other evidence of plaintiff's treatment for migraines after the June 23, 3018 onset date. For example, the "Claimant's Medications" form completed by plaintiff on November 21, 2019 states that she "was presently taking" two medications for migraines: Propanolol for prevention and Sumatriptan Injections as needed. AR 309. These medicines were adjusted in the months leading up to plaintiff's application for DIB. On January 29, 2018, Dr. Nancy Clayton (plaintiff's psychiatrist) noted that plaintiff "[h]as persistent headaches (migraines once every 2 weeks, non-migranous ~4 days/week); neurologist suggested increasing propranolol LA dose, but deferred to this provider." AR 492. When Dr. Clayton reviewed plaintiff's progress, plaintiff reported that her migraine headaches were "somewhat worse." Dr. Clayton increased plaintiff's dose of "propranolol LA to 160 mg PO QAM." AR 495. On February 23, 2018, Dr. Patrician Fritsche (a gynecologist) noted that plaintiff "has severe migraine headaches with aura."[2] AR 457, 458. A month later, on March 15, 2018, Dr. Clayton found that plaintiff "[t]olerated increase dose of propranolol LA and has had some improvement in migraines since (less photophobia) increasing from 120 mg to 160 mg daily; still gets [headaches], though attenuated, but doesn't think she would be able to tolerate orthostatically another dose increase." AR 434.

Because the ALJ relied on only excerpts from plaintiff's records without mentioning other, conflicting information contained in those same records (such as the references to plaintiff's emergency room visits), this is not a case in which the ALJ weighed conflicting evidence and reached a decision to which the Court must defer. Instead, the ALJ either

---

[2] Dr. Fritsche's records regarding plaintiff's migraines are written in the present tense and are listed under "history of present illness" and under "family history." AR 457 and 458. Dr. Fritsche also listed migraines under "past medical/surgical history," (AR 457) showing that an impairment can be recorded in the medical records as both a part of the patient's past medical history and also as an ongoing condition.

mistakenly overlooked this important information or improperly cherry-picked evidence to support his conclusion.[3] Either explanation results in this Court's inability to find that substantial evidence supports the ALJ's conclusion that plaintiff's migraines are not a severe impairment. Given the ALJ's reliance on only portions of the medical records, which when considered in their totality do not support his conclusion, the finding that plaintiff is not disabled must be reversed and this matter remanded.

Defendant argues that plaintiff failed to prove that her migraines were a severe impairment, but defendant's argument is not supported by the records on which defendant relies. For example, defendant asserts that:

> [i]n only three instances during the relevant period did plaintiff complain of migraines. Tr. 1409, 2339, 2481 (November 2018, April 2019, and August 2019). Even in April 2019, while Plaintiff complained of frequent moderate headaches, she acknowledged that severe headaches only occurred infrequently. Tr. 2339. And, even when Plaintiff reported worse migraines in August 2019, she claimed to be satisfied with the pain control she achieved on her medication. Tr. 2483 . . . the overall medical record indicates that her migraines were well controlled with medication.

[Dkt. No. 29] at 26. Like the ALJ, defendant misreads plaintiff's records. First, the November 2018 records defendant cites also indicate that plaintiff's migraines were a serious problem that caused her to be bedridden two to three times per month: "migraines 2-3 times a month, lasting 1-3 days, stays bed, takes naproxen for pain." AR 1409. Next, the April 2019 record is a "Neck Pain Disability Index" form, which is a questionnaire regarding the effect of the patient's musculoskeletal pain on her daily life and is not a record regarding plaintiff's migraines. AR

---

[3] An ALJ "has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Arakas v. Comm'n of Soc. Sec., 983 F.3d 83, 98 (4th Cir. 2020) (quoting Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017)); see also Cordell, 2019 WL 6257994, at *13 ("[A]n ALJ excludes relevant evidence at [his] peril.").

2339. Finally, defendant grossly misreads the August 2019 records, which support—rather than undermine—plaintiff's claim. As defendant acknowledges, the records of plaintiff's August 2019 visit state that "she also reports worsening Migraines" (AR 2481); however, defendant incorrectly characterizes plaintiff's migraines as controlled by medication at that time. Read correctly, the August 2019 records state that plaintiff was satisfied with the effect of Tramadol, a medication that she took for her chronic musculoskeletal pain, not for her migraines. AR 2483 ("Medications Comment: Tramadol . . . EFFECTIVENESS FOR PAIN MANAGEMENT Patient satisfied with pain control.")

Defendant also argues that plaintiff has "failed to show how the ALJ's step two findings prejudiced her." [Dkt. No. 29] at 28. Although the Fourth Circuit has adopted a harmless error rule regarding step two omissions, the Court is not persuaded that the rule applies to this case. "District courts . . . have adopted the view that an ALJ does not commit reversible error by omitting an impairment at step two, so long as the ALJ considers the impairment [at] subsequent steps"; however, for the omission to be harmless, the impairment must be "sufficiently considered." Woodson v. Berryhill, 2018 WL 4659449, at *4–5 (E.D. Va. Aug. 7, 2018). Here, there is no indication that the ALJ gave sufficient consideration to plaintiff's migraines when he defined plaintiff's RFC. Indeed, because the ALJ had a fundamental misunderstanding of the medical evidence regarding plaintiff's migraines, he could not have given her impairment sufficient consideration at a later stage. Defendant's argument that the ALJ considered the opinions of the state agency consultants and included some restrictions in the RFC does not convince the Court that the ALJ's error was harmless because neither the consultants who evaluated plaintiff's physical condition nor the consultants who evaluated her psychological condition addressed the impact of her migraines on her ability to work. For these

reasons, the ALJ's error was not harmless, and his decision must be remanded for further consideration of the plaintiff's migraines and their effect on her RFC.

2. RFC Analysis: Concentration, Persistence, and Pace

Plaintiff argues that, after determining at step three of the sequential analysis that plaintiff has "a moderate limitation in her ability to concentrate, persist and maintain pace," (AR 24) the ALJ did not adequately account for this limitation when he went on to determine that she had the RFC to perform "simple, routine and repetitive tasks." AR 25. The ALJ found that with regard to plaintiff's "cognitive and intellectual functioning, the totality of the record evidence supports finding that [plaintiff] would be able to perform simple, routine, and repetitive tasks." AR 29. The ALJ supported that conclusion by pointing to plaintiff's "Full-Scale IQ [which] was identified as within the superior range of general intellectual" and tests that "measure 'inattentiveness, impulsivity, sustained concentration, and vigilance' fell within the average range." AR 29-30. In addition, the ALJ found that plaintiff's mental status examinations showed she "was alert and well-oriented, with a logical and linear thought process, appropriate thought content, with no signs of hallucinations or delusions, and normal attention span and concentration skills." AR 30. Finally, the ALJ concluded that although plaintiff's moderate depressive disorder could "reasonably be expected to interfere to a certain extent with the [plaintiff's] concentration and cognitive functioning . . . the totality of the hearing record evidence regarding cognitive and intellectual functioning demonstrates claimant is able to perform simple and routine tasks." AR 29-30.

Despite stating that he considered the totality of the hearing record, the ALJ in fact failed to take into account the significant side-effects of the plaintiff's many medications. During the period for which plaintiff applied for DIB, she was regularly prescribed numerous

medications, including: baclofen (for muscle spasms), tramadol (for chronic pain), bupropion (for depression), clonazepam (for anxiety and panic attacks), propranalol hydrochloride (for migraine prophylaxis and anxiety), sumatriptan (for migraine), Concerta (for concentration), and estrogen.[4] AR 843-45. At the hearing, plaintiff testified that she had "lots" of side effects from her medications and that "[i]t makes me sleepy. It makes me fuzzy-headed." AR 58. Plaintiff's testimony is consistent with side effects listed on the labels of her medications. For example, the label for baclofen describes the following "adverse reactions" associated with the drug: "[t]he most common is transient drowsiness (10-63%). . . . Other common adverse reactions are dizziness (5-15%), weakness (5-15%) and fatigue (2-4%)."[5] Similarly, the most common side effects of tramadol include sleepiness and dizziness,[6] and propranolol can cause lightheadness, fatigue, "slightly clouded sensorium, and decreased performance on neuropsychometrics."[7] The ALJ's failure to consider the impact of plaintiff's medications on her alertness and ability to think clearly undermines his conclusion regarding plaintiff's ability to maintain concentration, persistence, and pace and requires remand.

3. RFC Analysis: Opinion of Treating Psychologist

Plaintiff's treating psychologist, Dr. O'Leary, completed Medical Source Statement forms entitled "Depression" and "Anxiety" on November 22, 2019. On the Anxiety form, Dr.

---

[4] Plaintiff was prescribed additional medications on a less regular basis.

[5] Baclofen [Package Insert]. Caraco Pharmaceutical Laboratories, Ltd; 2007, https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=346af8fe-3816-49de-bfd3-5a7425e728f9&type=display.

[6] Tramadol HCL [Package Insert]. Watson Laboratories; 2007, https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=ae7c54b1-b440-4cca-97e8-e5b825413d32&type=display.

[7] Propranolol Hydrochloride [Package Insert]. Actavis Pharma, Inc.; 2015, https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=a4edba76-29b8-41fb-bf0b-d4633abba003&type=display.

O'Leary wrote that plaintiff "is currently in treatment for PTSD. The above symptoms are the result of a trauma related disorder and not a general anxiety disorder." AR 2568. Dr. O'Leary indicated that plaintiff was moderately impaired in her ability to "[u]nderstand, remember or apply information," to "[i]nteract with others," to "[c]oncentrate, persist, or maintain pace (in work settings or elsewhere)" and to "[a]dapt or manage oneself." AR 2566 and 2268. Dr. O'Leary marked plaintiff's ability to "[a]dapt or manage oneself," as "mild" with regard to her depression (AR 2566) and as "moderate" with regard to her PTSD. A "moderate" impairment is defined as "[a]n impairment which affects but does not preclude ability to function." A "marked" impairment" is "[a]n impairment which seriously affects ability to function independently, appropriately and effectively." Finally, an "extreme" impairment is defined as a "[s]evere impairment of ability to function." AR 2566 and 2268.

On a separate page that is not on its face limited to either the Depression or the Anxiety form, Dr. O'Leary answered "yes" to the question "Are your patient's impairments likely to produce 'good days' and 'bad days'?" and answered "about four times a month" to the request that she "estimate, on the average, how often your patient is likely to be absent from work as a result of the impairments or treatment." AR 2570.

The ALJ did not find Dr. O'Leary's opinion persuasive because, as he explained, "Dr. O'Leary opines claimant's mental health would cause her to be absent more than 4 times a month, but does not identify anything more serious than a moderate limitation in any of the four main areas of mental functioning. If an individual's psychiatric symptoms were so severe to cause absenteeism more than four times a month, more than one of the areas of mental functioning identified would result in 'marked' or 'extreme' limitation." AR 33.

The plaintiff argues that the ALJ erred in his evaluation of Dr. O'Leary's opinion by applying the wrong legal standard, not adequately explaining his conclusion, and misstating Dr. O'Leary's opinion with regard to the average number of times that plaintiff could be expected to be absent from work due to her mental health impairments. Indeed, contrary to the ALJ's statement that Dr. O'Leary "opine[d] that claimant's mental health would cause her to be absent more than 4 times a month" (AR 33), Dr. O'Leary in fact circled "about four times a month" on the Medical Source Statement form. AR 2570.

When considering medical opinions in claims filed after March 27, 2017, the SSA will "not defer or give any specific evidentiary weight" to any medical opinion, but will "articulate" . . . how persuasive [the SSA] find[s] all of the medical opinions" after considering the five factors listed in the regulation. 20 C.F.R. §404.1520c(A). The most important factors for the SSA to consider when determining the persuasiveness of a medical opinion are supportability and consistency, and the SSA must explain in its determination how it considered those factors. 20 C.F.R. § 404.1520c(b)(2).

The ALJ applied the correct regulatory standard for evaluating Dr. O'Leary's opinion, but his implementation of that standard is not supported by substantial evidence. The ALJ found that Dr. O'Leary's opinion was "not entirely consistent with the totality of the evidence, and is internally inconsistent, including with Dr. O'Leary's own examination findings." AR 33. As previously discussed, the ALJ found that Dr. O'Leary's rating of plaintiff's areas of mental functioning was inconsistent with absences of "more than 4 times per month" (AR 33), which was a mischaracterization of Dr. O'Leary's estimate.

In addition, the record includes treatment notes from ten visits that plaintiff had with Dr. O'Leary between November 2018 and September 2019, all within the period for which plaintiff

13

seeks DIB. For each visit, Dr. O'Leary's notes consistently describe plaintiff's affect as depressed and describe her depression as debilitating. See, e.g., AR 2381 ("Pt has been getting out of bed more consistently but continues to report debilitating depression."); AR 2380 ("Pt continues to struggle with debilitating depression."). Dr. O'Leary's notes also recorded that plaintiff "wanted to re-engage in the working world" but that her mental health impairments interfered with her ability to do so. AR 2376. Because the ALJ's decision does not clearly identify how Dr. O'Leary's records are inconsistent, and given the ALJ's incorrect characterization of Dr. O'Leary's estimate of plaintiff's potential for absenteeism, this Court cannot find that the ALJ's conclusion that Dr. O'Leary's opinion is "internally inconsistent, including with Dr. O'Leary's own examination findings" is supported by substantial evidence. See Saunders, 2020 WL 94863, at *11.

### 4. RFC Analysis: Consideration of Punctuality and Attendance

Plaintiff argues that the ALJ "failed to properly evaluate pertinent evidence" when he did not include "any limitation related to attendance and punctuality in his residual functional capacity assessment." [Dkt. No. 26] at 16. According to plaintiff, the lack of such a limitation is reversible error because the vocational expert testified that "if an individual is absent two or more days per month, it's going to eliminate work. And if they have to – if they're tardy or late or if they leave early, if they do that a couple times, that's equivalent to one absence." AR 64. Through questioning by the ALJ, the vocational expert clarified that absences of two or more per month "on a consistent basis" would rule out any available jobs.[8] AR 66.

---

[8] The vocational expert also clarified that "this is not addressed in the DOT or the SCO. I'm relying on my knowledge and experience as a vocational rehabilitation counselor." AR 66.

Two state agency consultants whom the ALJ found persuasive, Dr. Joseph Leizer and Dr. Howard Leizer, provided "Mental Residual Functional Capacity Assessment[s]" in which they opined that plaintiff's "psychologically based symptoms" would cause her to have "1-2 [attendance or punctuality] problems per month." AR 85 and 105. The state agency consultants' estimate is in conflict with Dr. O'Leary's medical opinion, and the ALJ's error regarding Dr. O'Leary's opinion undermines his evaluation of this conflicting evidence. On remand, the ALJ must reweigh the conflicting opinions, taking into account Dr. O'Leary's actual estimate that plaintiff would be absent "about four times a month" as well as the entire record of her treatment of plaintiff.

In addition, it does not appear that the ALJ considered that plaintiff would be absent or tardy for reasons related to her physical impairments and migraines, in addition to the 1-2 absences per month that Drs. Howard and Joseph Leizer estimated would be caused by her "psychologically based symptoms," and also did not consider plaintiff's need for frequent appointments with many different types of health care providers. Finally, because the ALJ misread or overlooked the medical evidence regarding plaintiff's migraines, it appears he did not consider how plaintiff's attendance and punctuality, as well as her concentration, persistence, and pace, would be affected by that impairment, which in November 2018 occurred "2-3 times a month, lasting 1-3 days" and caused her to "stay[] [in] bed." AR 1409. Accordingly, after reevaluating the evidence regarding plaintiff's migraines and Dr. O'Leary's opinion on remand, the SSA should reconsider plaintiff's ability to satisfy punctuality and attendance requirements described by the vocational expert.

## III. CONCLUSION

For the reasons discussed above, plaintiff's motion for summary judgment will be granted, defendant's motion for summary judgment will be denied, the defendant's decision denying plaintiff's application for DIB will be vacated, and this matter will be remanded to the Social Security Administration for further consideration consistent with this Memorandum Opinion. An Order will be entered to accompany this decision.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 15th day of July, 2021.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge